JOHN B. BLANKINSHIP *vs.* ANDREW J. HADLEY & others.

A town was legally divided in 1852 into five school districts, and in 1853, upon a report of the selectmen, legally divided into five new districts. In 1855 the town voted to abolish the school district system and lines, and in 1856 voted to divide the town into five districts as defined in 1852, and then to reconsider so much of this vote as would form three of the districts into one, and afterwards voted to adopt the boundaries fixed by the selectmen. *Held,* that the three districts did not now constitute one district.

ACTION OF TORT against the assessors of Marion for arrest and false imprisonment, and compelling the plaintiff to pay a school tax voted by a school district formed by the union of the

---

Old Landing, Sippican North and Sippican South school dis-
tricts in that town.  The case turned upon the legality of the
action of the town in establishing this district, and was submit-
ted to the decision of the court upon an agreed statement of
facts, the substance of which appears in the opinion.

    *C. I. Reed,* for the plaintiff.

    *B. Sanford,* for the defendants.

    THOMAS, J.  The town of Marion was incorporated on the
14th of May 1852.  *St.* 1852, *c.* 225.  On the 10th of July
1852, upon a report of the general school committee, (to whom
the subject had been referred,) it was divided into five school
districts, with boundaries geographically defined.  On the 25th
of April 1853, upon the report of the selectmen (who had been
appointed a committee for the purpose) the town was again
divided into five districts with boundaries differing from the
first division.  These two divisions the parties concede to be
legal.  On the 13th of March 1854, the town voted that the
boundaries of the districts should remain as last defined, that is,
as defined in April 1853.  On the 2d of April 1855, the town
voted to abolish the district system and the school districts.  On
the 14th of April 1856, the town voted to divide the town into
five school districts as first defined by the town committee.
The town also voted " to choose a committee of five to define
the school district lines."  The meeting adjourned to the after-
noon.  On reassembling in the afternoon, the town voted " to
reconsider so much of the vote to form five school districts, as
would form the three districts, Old Landing and the two Sippi-
can districts, into one district."  On the 16th of June, the com-
mittee chosen at the last meeting (April 14th 1856) to define the
lines of the districts reported that they had come to the conclusion
not to define the lines, but to " recommend to the town the lines
and boundaries which the selectmen fixed upon when chosen for
that purpose."  They gave as a reason for this course, that on
examining the town records they came to the conclusion there
was a mistake in recording the action of the town on the article
in the warrant, and that to be governed by the records as they
were would not carry out the intention of the town.  The town

voted to accept the report of the committee, and to adopt their recommendation to define the lines and bounds of the several districts.

The effect of the vote of April 14th 1856 was to adopt the lines and boundaries of the districts as first established by the town July 10th 1852. The effect of the vote of June 16th 1856 was to adopt the boundaries and lines of the districts as established April 25th 1853 and confirmed March 13th 1854. This division was into five districts, with well defined geographical lines. Possibly the real intention of the town was not carried out, but the votes must be read as written.

If the consolidated district, which voted the tax which the plaintiff seeks to recover back in this suit, was ever established, it was by the vote in the afternoon of April 14th 1856. The difficulties of giving such force to this vote are, we think, insuperable. The town in the morning voted to adopt the districts as fixed July 10th 1852. At the adjournment they voted to make one district of three of the districts established April 25th 1853. This left two of the districts of the first division of the town, and three of the second division consolidated into one. As the boundaries of the two divisions were different, this made an impracticable or impossible districting of the town. If we look to this vote of the adjourned meeting as establishing the consolidated district out of three now well defined districts, though the action was not effective as to the other two districts, we are met with the difficulty that the town cannot be districted in part; that the whole must be districted or none. *Perry* v. *Dover*, 12 Pick. 206. *Fry* v. *School District in Athol*, 4 Cush. 250. *Dickinson* v. *Billings*, 4 Gray, 46.

If by taking the votes of the meetings of April 14th and the vote of June 16th together, we could work out a districting which by conjecturing the intent of the town would cover the whole town, we are met by the difficulty that we should thus get a third districting of the town within ten years, in conflict with the *Sts.* of 1849, *c.* 206, and of 1851, *c.* 303. In no aspect in which the case presents itself, does this district seem to us legally established.

Into the questions as to its organization or the vote of the tax we need not therefore inquire. There being no legal district, the assessors are clearly liable. *Dickinson* v. *Billings,* 4 Gray, 46.

*Judgment for the plaintiff.*